J-S45001-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BRANCH BANKING & TRUST COMPANY | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DANIEL DORTIC | : | |
| | : | No. 1914 EDA 2022 |
| Appellant | : | |

Appeal from the Judgment Entered June 23, 2022
In the Court of Common Pleas of Northampton County Civil Division at
No(s):  2019-C-7086

BEFORE:  OLSON, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY OLSON, J.:                    **FILED FEBRUARY 09, 2023**

Appellant, Daniel Dortic, appeals from the judgment entered on June 23, 2022, in favor of Plaintiff, Branch Banking & Trust Company (hereinafter "Plaintiff"), and against Appellant, in the amount of $49,984.27.  We affirm.

The trial court ably summarized the underlying facts and procedural posture of this case:

> Plaintiff filed a complaint against [Appellant] on August 5, 2019, seeking judgment against him in the amount of $49,984.27 plus costs.  Plaintiff averred in the complaint that [Appellant] is the holder of a credit agreement ("Credit Line Agreement"), the terms and conditions of which were agreed to by the parties.  Plaintiff further averred that [Appellant] defaulted under the terms and conditions of the credit agreement by failing to make the required payments when due and that [Appellant] has an outstanding balance due and owing to Plaintiff in the amount of $49,984.27.
>
> On August 5, 2019, [Appellant] filed an answer to the complaint with new matter and a counterclaim.  In his

answer, [Appellant] stated that he is without sufficient knowledge to admit or deny that he is the holder of the credit agreement because he "does not recall any amounts owed on the alleged account." In response to the averments in the complaint concerning his alleged default of the terms and conditions of the credit agreement and the alleged due and owing balance, [Appellant] denied [the averments], stating that he "is without sufficient knowledge to admit or deny the allegation[s]" because he [was] without documentation that indicate[d] that he could be in default and/or documentation showing any amounts due to Plaintiff. In [Appellant's] counterclaim for conversion, [Appellant] ask[ed] that judgment be entered in his favor because Plaintiff exercised wrongful dominion and control when it withdrew money in excess of $30,000 from a joint account, owned by [Appellant] and his wife as tenants by the entireties, in order to offset the default on [Appellant's] individual obligation to Plaintiff under the Credit Line Agreement.

On October 27, 2021, Plaintiff filed a motion for summary judgment and a memorandum of law in support thereof, arguing that there [was] no genuine issue of material fact and requesting [the trial court] to enter judgment against [Appellant] in the sum of $49,984.27. Regarding [Appellant's] counterclaim, Plaintiff explain[ed] in his motion for summary judgment that on January 7, 2019, it offset from [Appellant] and his wife's Joint Checking Account and Joint CD Account amounts in the sums of $16,082.61 and $11,588.36, respectively, to pay down the amount due and owing under [Appellant's] Credit Line Agreement. Plaintiff further explain[ed] that these offsets were permissible pursuant to the Credit Line Agreement that [Appellant] entered into on August 9, 2016, as well as a Bank Services Agreement sent to [Appellant] and his wife on or about May 9, 2016.

. . .

Section 19 of [Appellant's] executed Credit Line Agreement states, in relevant part,

> Right to Setoff: You [(Plaintiff)] have the right to deduct any money I owe for a minimum Periodic Payment more than 15 days past due or the entire unpaid Outstanding

- 2 -

Balance (if the entire Outstanding Balance is due for any reason set forth in the Termination, Payment in Full paragraph) from any bank account I have at any of your offices or from any other money I have which is held by or due from you.

Credit Line Agreement at ¶ 19.

Section 13 of the Bank Services Agreement, sent on May 9, 2016 to [Appellant] and his wife with respect to their jointly[] held accounts, provides, in relevant part, the following:

RIGHT OF SETOFF: You hereby assign and grant to [Plaintiff] a security interest in all accounts as security for your obligations to the [Plaintiff] existing now or in the future. **[Plaintiff] reserves the right of setoff against any of your accounts without prior notice to you to repay any debt or obligation owed to us by you or any co-owner of your account as principal, endorser, or guarantor. This means that we have the right to apply part or all of the funds in your account for the satisfaction of any debt you or any co-owner of the account owes us.** If your account is an individual account, our right of setoff may be exercised to repay your debts, whether they are owned by you individually or jointly with others. **All of the funds in a joint account may be used to repay the debts of any co-owner, whether they are owed individually, by a co-owner, jointly with other co-owners, or jointly with other persons or entities having no interest in your account.** Debts subject to our right of setoff include those owed by you from another joint account in which you are a co-owner even though the debt may not have been directly incurred by you, as well as debts for which you are only secondarily liable. Our security interest and our right of setoff also applies: (i) when we give you credit for or cash a third-party check which is returned to us unpaid for any reason or is counterfeit regardless of the timing of said return; (ii) to cover overdrafts created in any account held by you or in which you have an interest whether or not you consented to the overdraft or are otherwise responsible for it; (iii) to recover service charges or fees owed by you or any joint owner of your account; (iv) to reimburse [Plaintiff] for any

costs or expenses in enforcing its rights, including, without limitation, reasonable attorneys' fees and the costs of litigation to the extent permitted by law. We may exercise our right of setoff or security interest even if the withdrawal results in an early withdrawal penalty or the dishonor of subsequent checks. You agree that [Plaintiff] will not be responsible for dishonoring items presented against your account when the exercise of our right of setoff or security interest results in insufficient funds in your account to cover the items. Our right of setoff or security interest may be exercised before or after the death of any account holder and can follow the proceeds to any other account held at [Plaintiff].

Failure of [Plaintiff] to exercise its right of setoff as provided herein on any occasion when the right arises does not affect [Plaintiff's] right to exercise its right of setoff at a later time for the same occurrence or for any subsequent occurrence. **The security interest granted by this Agreement is consensual and is in addition to [Plaintiff's] right of setoff.** Certain federal or state laws may be interpreted to protect funds received from federal or state agencies from setoff. You agree that our right of setoff applies to all funds deposited into your account, including funds received from the Social Security Administration and other federal or state agencies. **By continuing to deposit these funds into your account you agree to allow [Plaintiff] to exercise its right of setoff against these funds, and not to assert any claim or defense that these deposits are exempt from setoff based on any federal or state law, rule, or regulation.**

Bank Services Agreement at ¶ 13 (emphasis added).

. . .

On November 26, 2021, [Appellant] filed a response in opposition to Plaintiff's motion for summary judgment, admitting that Plaintiff and [Appellant] both executed a Credit Line Agreement on August 9, 2016 and that Plaintiff offset amounts from accounts jointly held by [Appellant] and his wife to pay down the amount due and owing under the Credit Line Agreement. However, . . . [Appellant argued] that while

- 4 -

the right of setoff is recognized as part of the common law of Pennsylvania, Plaintiff has not established that it was entitled to take money of another person ([Appellant's] wife) to pay a debt due by a depositor [(Appellant)]. [Appellant] further contends that his and his wife's mere receipt of the Bank Services Agreement may not be sufficient to demonstrate that they consented to the offset in order to overcome a conversion claim.

Trial Court Opinion, 6/23/22, at 1-3 and 5-6 (some capitalization and citations omitted).

On June 23, 2022, the trial court dismissed Appellant's counterclaim for conversion, granted Plaintiff's motion for summary judgment, and entered judgment in Plaintiff's favor, and against Appellant, in the amount of $49,984.27. Trial Court Order, 6/23/22, at 1. Appellant filed a timely notice of appeal. He raises one claim to this Court:

Did the trial court judge abuse his discretion in determining that there was no genuine issue of material fact as to whether Plaintiff's conversion of the funds contained in [Appellant's] jointly held entireties bank account violated the doctrine of tenancy by entireties in allowing the funds owed by [Appellant] and his spouse, in entireties, to be converted for a debt individually owed by [Appellant]?

Appellant's Brief at 5 (some capitalization omitted).

We have reviewed the briefs of the parties, the relevant law, the certified record, and the opinion of the able trial court judge, the Honorable Jennifer R. Sletvold. We conclude that Appellant is not entitled to relief in this case, for the reasons expressed in Judge Sletvold's June 23, 2022 opinion. Therefore, we affirm on the basis of Judge Sletvold's thorough opinion and adopt it as

our own. In any future filing with this or any other court addressing this ruling, the filing party shall attach a copy of Judge Sletvold's June 23, 2022 opinion.

Judgment affirmed. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 2/9/2023*

Circulated 01/30/2023 01:58 PM

COPY

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY, PENNSYLVANIA
CIVIL DIVISION

BRANCH BANKING AND TRUST COMPANY,  :

     *Plaintiff*  :

     v.  :     No. C48-CV-2019-07086

                    :     Motion for Summary Judgment

DANIEL DORTIC,  :

     *Defendant*  :

## OPINION

This matter is before the Court on the Motion for Summary Judgment of Branch Banking and Trust Company (hereinafter "BB&T" or "Plaintiff"). For the following reasons, Plaintiff's Motion is GRANTED, and the Counterclaim of Daniel Dortic (hereinafter, "Defendant") is DISMISSED.

## FACTS AND PROCEDURAL HISTORY

Plaintiff filed a Complaint against Defendant on August 5, 2019, seeking judgment against him in the amount of $49,984.27 plus costs. Plaintiff averred in the Complaint that Defendant is the holder of a credit agreement ("Credit Line Agreement"), the terms and conditions of which were agreed to between the parties. Pl.'s Complaint at ¶ 3. Plaintiff further averred that Defendant defaulted under the terms and conditions of the credit agreement by failing to make the required payments when due and that Defendant has an outstanding balance due and owing to Plaintiff in the amount of $49,984.27. *Id.* at ¶ 5.

On August 5, 2019, Defendant filed an Answer to the Complaint with New Matter and a Counterclaim. In his Answer, Defendant stated that he is without sufficient knowledge to admit or deny that he is the holder of the credit agreement because he "does not recall any amounts owed on the alleged account." *See* Def.'s Answer at ¶ 3. In response to the averments in the Complaint concerning his alleged default of the terms and conditions of the credit agreement and the alleged due and owing balance, Defendant denied same, stating that he "is without sufficient knowledge to admit

1

000016

or deny the allegation" because he is without documentation that indicates that he could be in default and/or documentation showing any amounts owed to Plaintiff. *Id.* at ¶¶ 4-6. In Defendant's Counterclaim for Conversion, Defendant asks that judgment be entered in his favor because Plaintiff exercised wrongful dominion and control when it withdrew money in excess of $30,000 from a joint account, owned by Defendant and his wife as tenants by the entireties, in order to offset the default on Defendant's individual obligation to Plaintiff under the Credit Line Agreement. *Id.* at ¶¶ 19-21, 26; *id.* at Exhibit "A" ("Certificate of Deposit Withdraw Notice").

On October 27, 2021, Plaintiff filed a Motion for Summary Judgment and a Memorandum of Law in support thereof, arguing that there is no genuine issue of material fact and requesting this Court to enter judgment against Defendant in the sum of $49,984.27. Regarding Defendant's counterclaim, Plaintiff explains in its Motion for Summary Judgment that on January 7, 2019, it offset from Defendant and his wife's Joint Checking Account and Joint CD Account amounts in the sums of $16,082.61 and $11,588.36, respectively, to pay down the amount due and owing under Defendant's Credit Line Agreement. Pl.'s Motion for Summary Judgment at ¶¶ 9-12. Plaintiff further explains that these offsets were permissible pursuant to the Credit Line Agreement that Defendant entered into on August 9, 2016, as well as a Bank Services Agreement sent to Defendant and his wife on or about May 9, 2016. *Id.* at ¶¶ 10-15; *id.* at Ex. "4" ("Affidavit of Godfrey Bacon" at ¶¶ 2-6; 9-12).

On November 26, 2021, Defendant filed a Response in Opposition to Plaintiff's Motion for Summary Judgment, admitting that Plaintiff and Defendant both executed a Credit Line Agreement on August 9, 2016 and that Plaintiff offset amounts from accounts jointly held by Defendant and his wife to pay down the amount due and owing under the Credit Line Agreement. Def.'s Response at pp. 1-2. However, citing to *Sherts v. Fulton Nat. Bank of Lancaster*, 342 Pa. 337, 21 A.2d 18 (1941), Defendant argues that while the right of setoff is recognized as part of the common law of Pennsylvania, Plaintiff has not established that it was entitled to take money of another person

2

000017

(Defendant's wife) to pay a debt due by a depositor (Defendant). Defendant's Response at p. 4. Defendant further contends that his and his wife's mere receipt of the Bank Services Agreement may not be sufficient to demonstrate that they consented to the offset in order to overcome a conversion claim. *Id.* at p. 5.

The Motion for Summary Judgment was assigned to the undersigned via the March 15, 2022 Argument Court list. The case is ripe for decision.

## STANDARD FOR SUMMARY JUDGMENT

The purpose of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for a trial." *Curran v. Philadelphia Newspapers, Inc.*, 497 Pa. 163, 439 A.2d 652 (1981). In Pennsylvania, "[s]ummary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kuney v. Benjamin Franklin Clinic*, 751 A.2d 662, 664 (Pa. Super. 2000). In determining whether to grant a motion for summary judgment, the court must view the record in a light most favorable to the non-moving party. *Dorohovich v. West Am. Ins.*, 589 A.2d 252, 256 (Pa. Super. 1991).

Pennsylvania Rule of Civil Procedure 1035.2 governs summary judgment, and states in pertinent part:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2.

3

000018

If the non-moving party fails to come forward with sufficient evidence to establish a contested fact, the Court may grant the moving party's motion for summary judgment. Pa.R.C.P. 1035.3(d). However, summary judgment should be granted only where the entitlement to judgment as a matter of law is free and clear of doubt. *Elec. Lab. Supply Co. v. Cullen*, 712 A.2d 304, 307 (Pa. Super. 1998). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Marks v. Tasman*, 527 Pa. 132, 589 A.2d 205 (1991).

## DISCUSSION

Plaintiff asserts that Defendant entered into the Credit Line Agreement, agreeing to make payments on the account as required by the account's terms, and that Defendant has failed to make the required payments. Plaintiff attached to its Complaint the Credit Line Agreement between itself and Defendant, as well as an affidavit signed by the Assistant Vice-President of Consumer Default Proceedings of Truist Bank[1], verifying that Defendant's last regularly scheduled monthly payment was made on August 14, 2018, that Defendant failed to make any additional voluntary payments thereafter, and that after giving Defendant credit for all payments and offsets related to the Credit Line Agreement, the amount due and owing to Plaintiff is $49,984.27. In this Affidavit, it is also explained that these offsets were permitted pursuant to Section 19 of the Credit Line Agreement and Section 13 of the Bank Services Agreement that Plaintiff forwarded to Defendant and his wife.[2]

---

[1] Plaintiff attached to its Motion for Summary Judgment a "Certificate of Authorization for Articles of Merger", demonstrating that National Penn Bank merged with BB&T, which was subsequently renamed "Truist." Pl.'s Motion for Summary Judgment at Ex. "5."

[2] The Affidavit explains that named Plaintiff in this matter, BB&T, was acquired by National Penn Bank in 2016, and it was Plaintiff's practice to forward a welcome packet including a copy of the Bank Services Agreement to each of National Penn Bank's personal banking customers whose accounts were being transferred to Plaintiff upon the merger.

4

000019

Section 19 of Defendant's executed Credit Line Agreement states, in relevant part, the

following:

> Right to Setoff: You (BB&T) have the right to deduct any money I owe for a minimum Periodic Payment more than 15 days past due or the entire unpaid Outstanding Balance (if the entire Outstanding Balance is due for any reason set forth in the Termination, Payment in Full paragraph) from any bank account I have at any of your offices or from any other money I have which is held by or due from you.

Credit Line Agreement at ¶ 19.

Section 13 of the Bank Services Agreement, sent on May 9, 2016 to Defendant and his

wife with respect to their jointly-held accounts, provides, in relevant part, the following:

> **RIGHT OF SETOFF.** You hereby assign and grant to the Bank a security interest in all accounts as security for your obligations to the Bank existing now or in the future. **The Bank reserves the right of setoff against any of your accounts without prior notice to you to repay any debt or obligation owed to us by you or any co-owner of your account as principal, endorser, or guarantor. This means that we have the right to apply part or all of the funds in your account for the satisfaction of any debt you or any co-owner of the account owes us.** If your account is an individual account, our right of setoff may be exercised to repay your debts, whether they are owned by you individually or jointly with others. **All of the funds in a joint account may be used to repay the debts of any co-owner, whether they are owed individually, by a co-owner, jointly with other co-owners, or jointly with other persons or entities having no interest in your account.** Debts subject to our right of setoff include those owed by you from another joint account in which you are a co-owner even though the debt may not have been directly incurred by you, as well as debts for which you are only secondarily liable. Our security interest and our right of setoff also applies: (i) when we give you credit for or cash a third-party check which is returned to us unpaid for any reason or is counterfeit regardless of the timing of said return; (ii) to cover overdrafts created in any account held by you or in which you have an interest whether or not you consented to the overdraft or are otherwise responsible for it; (iii) to recover service charges or fees owed by you or any joint owner of your account; and (iv) to reimburse the Bank for any costs or expenses in enforcing its rights, including, without limitation, reasonable attorneys' fees and the costs of litigation to the extent permitted by law. We may exercise our right of setoff or security interest even if the withdrawal results in an early withdrawal penalty or the dishonor of subsequent checks. You agree that the Bank will not be responsible for dishonoring items presented against your account when the exercise of our right of setoff or security interest results in insufficient funds in your account to cover the items. Our right of setoff or security interest may be exercised before or after the death of an account holder and can follow the proceeds to any other account held at the Bank.

5

000020

> Failure of the Bank to exercise its right of setoff as provided herein on any occasion when the right arises does not affect the Bank's right to exercise its right of setoff at a later time for the same occurrence or for any subsequent occurrence. The security interest granted by this Agreement is consensual and is in addition to the Bank's right of setoff. Certain federal or state laws may be interpreted to protect funds received from federal or state agencies from setoff. You agree that our right of setoff applies to all funds deposited into your account, including funds received from the Social Security Administration and other federal or state agencies. **By continuing to deposit these funds into your account you agree to allow the Bank to exercise its right of setoff against these funds, and not to assert any claim or defense that these deposits are exempt from setoff based on any federal or state law, rule, or regulation.**

Bank Services Agreement at ¶ 13 (emphasis added).

Defendant argues that Plaintiff provides "no legal authority for the concept that mere receipt of a document like the BSA is sufficient to demonstrate consent to its terms for purposes of a conversion claim." Def.'s Response at p. 5. However, Defendant fails to provide convincing legal authority to the contrary, and this Court is unaware of same. While Defendant admits that the right of setoff is recognized as part of the common law of Pennsylvania, he attempts to argue that pursuant to *Sherts v. Fulton Nat. Bank of Lancaster*, *supra*, Plaintiff was not entitled to take funds belonging to Defendant's wife to pay a debt owed by Defendant.[3]

In *Sherts*, the Court held that a bank improperly applied funds in a depositor's account against the bank's outstanding loan, where the accounts were held by the depositor – an attorney – for the benefit of his clients and other third parties. Only collections made by the attorney for clients and/or for a decedent's estate were placed in the accounts. The *Sherts* Court held that because the accounts did not belong to the named depositor, but to others for whom it was held in trust, this type of account was not available to the bank for payment of debts owned by the depositor individually.

---

[3] To the extent Defendant attempts to raise any argument on behalf of his wife, who is not a party to this action, we do not believe Defendant has standing to do so.

000021

*Sherts* is distinguishable from the instant matter. In *Sherts*, the depositor's accounts belonged to third parties, who did not give consent to the bank offsetting the funds. Unlike *Sherts*, the matter *sub judice* does not involve deposit funds held for the benefit of a third party in a trust, fiduciary, or agency context. *See E.F. Houghton & Co. v. Doe*, 628 A.2d 1172 (Pa. Super. 1993). Rather, Defendant's wife, a joint owner of the debited accounts, consented to Plaintiff offsetting the funds therein by virtue of the Bank Services Agreement. Nowhere in the pleadings does Defendant deny that he and his wife received this Bank Services Agreement or that they continued to deposit funds into their joint accounts thereafter. Plaintiff's setoff to pay down Defendant's default on the Credit Line Agreement was not an impermissible conversion[4] of the funds as Defendant alleges. The Bank Services Agreement between Plaintiff and Defendant and his wife, along with the Credit Line Agreement between the parties, permitted Plaintiff to offset the funds to attempt to make itself whole. Thus, we do not find that Defendant's Counterclaim for Conversion has any merit.

Defendant has admitted that he executed the Credit Line Agreement and, as indicated above, has provided general denials with respect to the alleged default thereunder. Plaintiff has provided this Court with a document demonstrating Defendant's payment history with respect to the line of credit at issue, as well as an Affidavit explaining that Defendant is in default of the Credit Line Agreement because he has failed to make any voluntary payments since August 14, 2018. Pl.'s Affidavit at 6-8; *id.* at Ex. "1" and "2."

The rules are clear – a Defendant cannot simply rest upon the mere allegations or denials of the pleadings. Pa.R.C.P. 1035.3(a). The Defendant must come forward and produce some

---

[4] Conversion is the deprivation of another's right of property in, or use or possession of, chattel, or other interference therewith, without the owner's consent and without lawful justification." *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 659 n. 3 (Pa. Super. 2000). "Money may be the subject of conversion." *Id.*

7

000022

indicia that there is a claim or controversy in this matter. Given the foregoing and because Defendant has not provided this Court with any evidence to show that he objected to the terms of Credit Line Agreement, the Bank Services Agreement, or to the balance owed under the Credit Line Agreement, Defendant has directly and/or indirectly admitted each of the averments of Plaintiff's Complaint. Therefore, Plaintiff has established that Defendant accepted the terms of the Credit Line Agreement and that Defendant breached the terms of the Credit Line Agreement by failing to pay the balance in his account.

## CONCLUSION

Upon reviewing the evidence in the light most favorable to Defendant as the non-moving party, and resolving against Plaintiff all doubts as to the existence of a genuine issue of material fact, we find that there is no genuine issue of material fact as to any necessary element of the cause of action and that Plaintiff is entitled to judgment as a matter of law. Accordingly, Plaintiff's Motion for Summary Judgment is granted, and Defendant's Counterclaim for Conversion is dismissed. We enter an Order consistent with this Opinion.

BY THE COURT:

Date: June 23, 2022

JENNIFER R. SLETVOLD, Judge

8

000023